UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ELISEO SOLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:07-CV-084-C |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Eliseo Solis seeks judicial review of a decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB). The United States District Judge reassigned this case to the United States Magistrate Judge for all proceedings. Solis did not consent to the jurisdiction of the United States Magistrate Judge. Pursuant to the order reassigning this case, the undersigned now files this Report and Recommendation. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision.

**I.   Standard of Review**

The court is statutorily limited to determining whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. 42 U.S.C. § 405(g); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). The Commissioner's

decision is granted great deference and will not be disturbed unless the court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

## II. Facts

Solis served in the United States Army during the Vietnam War and thereafter earned a master's degree in communications and worked as a city department manager, a county commissioner, and a coordinator for a charter school. (Tr. 75, 80, 351, 353, 517, 523.) He claims he became disabled and unable to work in 1999 because of anxiety, depression, and Post Traumatic Stress Disorder (PTSD) related to his military service. (Tr. 75, 353.)

In regard to his PTSD, Solis testified that he was drafted to serve in the Vietnam War in 1969 and that he worked as a meteorologist gathering weather information for an artillery battalion in Vietnam in 1970. (Tr. 351, 525, 531-33.) He testified that he was not trained to be a combat soldier and reported to a counselor that he did not expect to face combat situations but his weather gathering unit was hit with mortar and ground attacks and two soldiers with whom he worked were killed during the attacks. (Tr. 148, 353, 525.) He reported to medical personnel that he experienced nightmares regarding his experiences in Vietnam and that he became distressed and upset if something happened that reminded him of the military. (Tr. 353.)

Solis testified that he quit working in 1999 after he was asked to resign because of "personal problems." (Tr. 518.) He began detoxification and treatment for drug and alcohol abuse on May 23, 2001, and has remained sober since that date. (Tr. 146, 273, 520-21.)

He claims he used alcohol and drugs to deal with his PTSD and that he experienced an increase in depression and anxiety and that symptoms related to PTSD resurfaced after he stopped using drugs and alcohol. (Tr. 177, 519, 522. ) He also claims he became severely depressed after he suffered a number of personal losses in 2001 and 2002: his brother died in September 2001; his sister died in November 2001; and his wife died in March 2002. (Tr. 158, 527.) He claims the trauma he experienced as a result of the deaths negatively impacted his PTSD. (Tr. 527.)

### III. Points of Error

Solis claims (1) the Administrative Law Judge (ALJ) erred in characterizing his testimony and (2) the ALJ did not consider whether he is capable of maintaining employment. He argues that in certain cases the Commissioner must specifically determine whether the claimant is capable of maintaining employment and that such a determination was necessary in his case. He claims he suffers from symptoms common among individuals diagnosed with PTSD such as sleep problems and disassociation and that his symptoms are exacerbated by the current war. He claims the ALJ did not properly consider his allegation that PTSD rendered him incapable of sustaining employment. He points to his testimony that he was able to work in the past but that his work was affected by attendance problems caused by his PTSD, and that he started a business with a friend after he quit his full-time job in 1999

but could not continue working because of his tendency to isolate himself and not show up for work. He also points to the testimony of the vocational expert who testified that excessive absenteeism would preclude sustained employment.

## IV. Discussion

### A. *The ALJ's discussion of Solis' testimony*

The ALJ noted that Solis acknowledged in testimony that he was able to care for multiple grandchildren. (Tr. 22.) He noted that Solis did not suffer significant limitations that prevented him from caring for several small children and that his mental impairments did not significantly limit his social interactions with his grandchildren. *Id*. Solis claims the ALJ mischaracterized his testimony. He claims he clarified some of his testimony at the hearing. He claims he testified that he did not take care of his grandchildren and that he only lived with them.

Solis is, in part, correct; he recanted testimony at the hearing. At the beginning of the hearing he testified that he had been taking care of his grandchildren. (Tr. 518.) He testified that he had a grandchild who was fourteen years old and a grandchild who was nine years old and that his daughter and her two children, a baby and a toddler, lived with him as well.[1] *Id*. He later testified, in response to the ALJ's questioning as to how his mental

---

[1] In response to the ALJ asking whether he worked, Solis stated: "Basically, I have been doing now, basically for the last few months, I'm taking care of my – some children of mine. I have my kids, but other than that, on my own, I'm dabbling a little bit in writing and I watch, we're working on the yard and then once or twice a month, you know, I have a friend and a nephew that sometimes they just need somebody to help them or do some little work so I go out every once in awhile and do that but, basically, right at the, since, for the last almost year, I've sort of been watching over my kids that I have with me now." (Tr. 518.)

4

impairments affected his ability to care for his grandchildren, that he did not take care of them. (Tr. 523.) He stated, "I just live with them." *Id*.

It is within the ALJ's discretion to determine what weight to assign conflicting evidence presented at the hearing. *Wingo v. Bowen*, 852 F.2d 827, 830 (5th Cir. 1988). In this case the ALJ exercised that discretion and gave more weight to Solis' testimony that he took care of his grandchildren. The ALJ's decision to do so does not require remand. It should be noted that Solis and his wife were granted custody of a granddaughter and were raising the child in their home as early as 2001 and that Solis maintained guardianship and cared for the child as late as August 2005. (Tr. 184, 191, 195, 306, 485, 490; *see also* Tr. 338 (Solis reporting that he woke up his granddaughter and took her to school and picked up the granddaughter and another granddaughter from school in the afternoon); Tr. 191 (Solis reporting that he "got his granddaughter off to school" and attended her sporting events).) Solis' daughter and her children did not begin living with him until August 2005. (Tr. 490.) Thus, the evidence establishes that Solis was capable of independently caring for at least one of his grandchildren on an ongoing basis without the help of his adult daughter. This evidence substantially supports the ALJ's determination that Solis' limitations did not affect his ability to socially interact with his grandchildren. As the ALJ found, Solis' ability to care for his grandchildren undermined his allegations of a severe social impairment.

B. <u>Solis' Ability to Maintain Employment</u>

In *Singletary v. Bowen*, 798 F.2d at 819, 822-23 (5th Cir. 1986), the Fifth Circuit Court of Appeals reviewed the Commissioner's denial of benefits to a plaintiff who

suffered from schizophrenia, delusions, antisocial personality, inadequate personality, and passive-aggressive personality and who had been unable to maintain a job for any significant period of time. The court acknowledged that it is often difficult to predict the course of mental illness because symptoms may wax and wane; individuals with mental illness may experience symptom-free periods indicative of remission that are of uncertain duration followed by relapses or unforeseeable mental setbacks. *Id*. at 821. The court held that in a case in which a claimant's mental illness waxes and wanes, it must be determined whether the claimant cannot only obtain but maintain employment. *Id*. at 822 (it must be determined whether the claimant "can hold whatever job he finds for a significant period of time.") After *Singletary* the court held that the ALJ is not required to make a specific finding regarding the claimant's ability to maintain employment in every case unless the claimant establishes intermittently recurring symptoms that are of sufficient frequency or severity to prevent him or her from holding a job for a significant period of time. *Frank v. Barnhart*, 326 F.3d 618, 619-20 (2003); *see also Dunbar v. Barnhart*, 330 F.3d 670, 672 (2003) (reiterating that the ALJ need not make a specific finding in every case that the claimant can maintain employment).

In this case, the ALJ determined that Solis' mental impairments did not render him incapable of performing work on a continued and sustained basis and concluded that he was capable of the full range of work across all exertional levels so long as such work was limited to repetitive tasks and did not require any interaction with the public. (Tr. 23.) The ALJ's determinations are supported by Solis' own testimony as well as evidence in the

6

medical records.

This is not a case within which the claimant suffers from symptoms such as those of the plaintiff in *Singletary*. The plaintiff in *Singletary* "led a wandering, nomadic existence" traveling between several states and living in hospitals, bus stations, missions, the woods, and the homes of his relatives. 798 F.2d at 819. He spent "considerable amounts of time in various hospitals and mental institutions" and was sporadically employed at various intervals at jobs that did not require long-term commitment such as a deck-hand, roustabout, rigger, and gallery-hand. *Id*. He suffered repeated setbacks. The court noted that he had lived a tragic and chaotic life, had been hospitalized repeatedly over a long period of time, and had been unable to remain employed for more than limited periods of time. *Id*. at 823. The court placed emphasis on reports from the plaintiff's physicians and acknowledged that a determination that a claimant cannot work for significant periods of time without setbacks must be supported by medical evidence; the claimant's personal history is insufficient. *Id*. at 822. In *Singletary* physicians indicated in treatment notes that the plaintiff exhibited poor judgment, poor insight, and anti-social tendencies; had inferior "intellectual endowment"; and was unable to relate socially. *Id*. at 822. One physician noted that the plaintiff had low average intelligence, some diffuse brain damage, an "inadequate personality," and experienced periodic alcohol and drug abuse and transient psychotic episodes. *Id*. at 823. The physician believed the plaintiff was "very inept" and would probably always experience vocational, social, and interpersonal problems. *Id*.

Solis' mental impairments have not resulted in the ongoing setbacks or

limitations experienced by the plaintiff in *Singletary*. Solis suffered short-term setbacks from intensified symptoms of PTSD and depression after he stopped using drugs and alcohol and again after his wife died. (*See* Tr. 144-52, 184, 198.) The symptoms he experienced as a result were not the sort that would render him incapable of performing work that did not involve repetitive tasks or interaction with the general public. The medical records indicate that the mental limitations Solis experienced were connected to the grief process and financial stress and that he experienced a lack of motivation, an increase in anxiety and depression, and problems sleeping. (Tr. 176, 179, 183, 185, 189-90.) However, the records demonstrate that the symptoms related to Solis' PTSD and depression were not totally disabling. In the months following his wife's death, Solis expressed interest in applying for a job with the city, reported no conflicts with others, was taking care of his granddaughter, and was writing a book. (Tr. 157, 183, 188, 191.) In August 2003, seventeen months after his wife's death, Solis was also hospitalized for a few days after he expressed suicidal ideation. (Tr. 176-78.) The set-back was temporary, however, and symptoms related to his PTSD and depression improved with medication. (Tr. 152, 186, 208.) His PTSD was characterized as stable; he denied hallucinations; and although he expressed reluctance to engage in activities with the public, he reported that he did not experience interpersonal problems or conflicts with others. (Tr. 145, 152, 155, 161, 174, 176, 526.)

Solis has not alleged and his physicians and caseworkers have not reported that he suffers from hallucinations or delusions or personality disorders that would preclude him from performing work on a sustained basis. Unlike the plaintiff in *Singletary*, Solis has not been hospitalized repeatedly for psychiatric problems. Although he suffered depression, lack of motivation, and problems sleeping, there is no medical evidence that he exhibited inappropriate behavior or poor social adjustment or low intelligence that would preclude him from maintaining a job. *Compare Singletary*, 798 F.2d at 823. Significantly, Solis testified that he did not believe he could work because he experienced problems sleeping and because "intrusive thoughts" interfered with his ability to maintain concentration. (Tr. 526.) He reported to medical personnel that he did not enjoy social events and activities but also reported that he believed one of his strengths was his ability to interact and communicate, that he attended his granddaughter's sporting events and church, and that he completed jobs with relatives and friends. (Tr. 145, 191, 518, 527.) The ALJ's determination that Solis could perform jobs that involved repetitive tasks and that did not involve interaction with the public accommodates Solis' allegations related to concentration difficulties and reluctance to engage the public.

## V. **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall

bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: January 30, 2008.

/s/ Nancy M. Koenig
NANCY M. KOENIG
United States Magistrate Judge